UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEROY DALE HOLSEY,

          Petitioner,

    v.

WILLIAM KNIPP,

          Respondent.

No.  2:13-cv-00962-KJM-GGH

FINDINGS AND RECOMMENDATIONS; ORDER

INTRODUCTION AND SUMMARY

       Petitioner is a state prisoner proceeding, through appointed counsel, with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted of failing to update his annual sexual offender registration with two prior strikes and was sentenced to a prison term of 28 years to life in the Placer County Superior Court.  Petitioner challenges his conviction and sentence on the following grounds: 1) due process violation by the trial court in instructing the jury that forgetting to register by itself was not a defense; 2) ineffective assistance of counsel for failure to obtain a pre-guilt phase psychological evaluation of petitioner, failure to obtain a post-trial psychological report, and failure to present evidence of petitioner's mental health problems during the guilt phase; 3) violation of Sixth Amendment right to counsel when the trial court failed to conduct a Marsden hearing and appoint him new counsel; 4) due process violation by the trial court in failing to dismiss petitioner's prior strikes; and 5) the 28-year-to-life sentence is grossly disproportionate to the offense and violates the Eighth Amendment's prohibition on cruel and unusual punishment.

1

1    Upon careful consideration of the record and the applicable law, the undersigned will

2  recommend that petitioner's application for habeas corpus relief be denied.

3  BACKGROUND

4    In its unpublished memorandum and opinion affirming petitioner's judgment of

5  conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

6  following factual summary:

7      *Introduction*

8      Defendant was charged with failing to register as a sex offender
       within five working days of his birthday.  The pattern instruction
9      for that offense sets forth four elements the People must prove, as
       follows: (1) defendant had been convicted of a sex offense
10     requiring registration; (2) defendant lived at a particular address; (3)
       defendant knew he had a duty to register within five working days
11     of his birthday; and (4) defendant willfully failed to register.
       (CALCRIM No. 1170.)
12
13     Defendant had been a sex offender registrant for many years,
       registered many times, and twice before was convicted of
14     registration violations.  For tactical reasons, the defense stipulated
       he had been convicted of a felony sex offense requiring registration,
15     and that he lived at an address on Main Street in Roseville.  This
       left two jury issues, whether or not defendant actually knew he had
16     to register, and whether his failure to do so was willful.

17     *Trial Evidence*

18     Defendant was born on March 20, 1965.  Roseville police officers
       Rick Fox and Jude Chabot spoke to him at his Main Street
19     apartment on April 14, 2010.  On April 27, 2010, they arrested him.
       He told the officers he forgot to register and was waiting for the
20     police to send him a reminder notice.

21     A police department analyst described how the registration records
       were kept, and testified all registrations are done in person.  At
22     every registration, the registrant is advised of the duty to re-register
       each year within five working days of his (or her) birthday, and the
23     form has a line so stating, which the registrant must initial before
       signing the form.  Defendant had registered four times in Roseville,
24     once as an incoming registrant, once as an annual renewer in 2006,
       once due to a return to the area, and finally, on April 2, 2009, when
25     he moved to Main Street.  Each of the four clerks who assisted
       defendant to register in Roseville testified and identified the forms
26     he filled out.  Two clerks did not remember him.  One testified he
       was coherent and responsive.  The last clerk, who registered
27     defendant when he moved to Main Street in 2009, testified she did
       not recall anything unusual in his behavior or questions.

28  / / /

2

A Department of Justice analyst identified defendant's statewide registration file, which indicated he did not register after 2009. The file reflected registrations dating back to 1986, and that defendant registered at "CDC," the former California Department of Corrections, on October 13, 2002, registered at Atascadero State Hospital on September 24, 2003, then again registered at CDC on February 13, 2004. Thus, it shows defendant was in the hospital for a period of about five months; this five-month period was seven years before the instant offense.

Defendant was convicted in 2002 of failing to register, and the jury was instructed this fact could be used to show he knew of his duty to register.

Defendant presented no evidence.

*Jury Arguments*

The People argued defendant knew he had a duty to register because he had a prior conviction for failing to register, and had registered many times in the past, including three times as annual renewals after his birthday, and that he had initialed and signed multiple forms reflecting this duty. Willfulness was shown because he knew he had to register, was able to register, but failed to register, and a person cannot "just sit back, not register, and simply claim that it wasn't willful." "[F]orgetting is simply not a defense."

Defense counsel effectively conceded defendant had knowledge of the registration requirement, and in fact emphasized that he had a history of registering, but also pointed to evidence in the exhibits showing defendant had spent time in Atascadero State Hospital, and argued there was a reasonable doubt about whether the fact he did not register this time was willful, or due to a mental health problem leading him to forget, as defendant had told the officers.

When the prosecutor began to counter the defense argument by pointing out the lack of evidence of defendant's mental problems, defense counsel objected.

Outside the presence of the jury, the court overruled the objection, stating "you did argue to the jury that or infer that your client has mental health issues, yet you didn't present any evidence of that for the jury. So I feel that the People can comment on the fact that the defendant never . . . produced any evidence to demonstrate any mental health issues."

When rebuttal resumed, the prosecutor emphasized the meager evidence of mental health issues, consisting of the fact that about seven years ago defendant was in a state hospital, and emphasized that defendant did not act crazily when questioned by the police, but instead claimed he simply forgot. The prosecutor did not argue evidence of a mental problem could never negate willfulness or actual knowledge.

People v. Holsey, 2012 WL 4857576, at **1-2 (Cal. Ct. App. Oct. 15, 2012).

3

1    After petitioner's judgment of conviction was affirmed by the California Court of Appeal,

2    he filed a petition for review in the California Supreme Court.  (Resp't's Lod. Doc. 8.)  The

3    Supreme Court summarily denied that petition without comment or citation by order dated

4    December 19, 2012.  (Resp't's Lod. Doc. 9.)

5    DISCUSSION

6    I. AEDPA Standards

7    The statutory limitations of federal courts' power to issue habeas corpus relief for persons

8    in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective

9    Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

17    As a preliminary matter, the Supreme Court has recently held and reconfirmed "that §

18    2254(d) does not require a state court to give reasons before its decision can be deemed to have

19    been 'adjudicated on the merits.'"  Harrington v. Richter, 131 S.Ct. 770, 785 (2011).

20    Rather, "when a federal claim has been presented to a state court and the state court has denied

21    relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

22    of any indication or state-law procedural principles to the contrary."  Id. at 784-785, citing Harris

23    v. Reed, 489 U.S. 255, 265, 109 S.Ct. 1038 (1989) (presumption of a merits determination when

24    it is unclear whether a decision appearing to rest on federal grounds was decided on another

25    basis).  "The presumption may be overcome when there is reason to think some other explanation

26    for the state court's decision is more likely."  Id. at 785.

27    / / /

28    / / /

4

1      The Supreme Court has set forth the operative standard for federal habeas review of state

2  court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an *unreasonable*

3  application of federal law is different from an *incorrect* application of federal law.'"  Harrington,

4  131 S.Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495 (2000).  "A state

5  court's determination that a claim lacks merit precludes federal habeas relief so long as

6  'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. at 786,

7  citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004).

8      Accordingly, "a habeas court must determine what arguments or theories supported or . . .

9  could have supported[] the state court's decision; and then it must ask whether it is possible

10  fairminded jurists could disagree that those arguments or theories are inconsistent with the

11  holding in a prior decision of this Court."  Id.  "Evaluating whether a rule application was

12  unreasonable requires considering the rule's specificity.  The more general the rule, the more

13  leeway courts have in reaching outcomes in case-by-case determinations.'"  Id.  Emphasizing the

14  stringency of this standard, which "stops short of imposing a complete bar of federal court

15  relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has

16  cautioned that "even a strong case for relief does not mean the state court's contrary conclusion

17  was unreasonable."  Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

18      The undersigned also finds that the same deference is paid to the factual determinations of

19  state courts.  Under § 2254(d)(2), factual findings of the state courts are presumed to be correct

20  subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a

21  decision that was based on an unreasonable determination of the facts in light of the evidence

22  presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in §

23  2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the

24  factual error must be so apparent that "fairminded jurists" examining the same record could not

25  abide by the state court factual determination.  A petitioner must show clearly and convincingly

26  that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338, 126 S.Ct.

27  969, 974 (2006).

28  / / /

5

1    The habeas corpus petitioner bears the burden of demonstrating the objectively

2    unreasonable nature of the state court decision in light of controlling Supreme Court authority.

3    Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).  Specifically, the petitioner "must

4    show that the state court's ruling on the claim being presented in federal court was so lacking in

5    justification that there was an error well understood and comprehended in existing law beyond

6    any possibility for fairminded disagreement."  Harrington, 131 S.Ct. at 786-87.  "Clearly

7    established" law is law that has been "squarely addressed" by the United States Supreme Court.

8    Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008).  Thus, extrapolations of

9    settled law to unique situations will not qualify as clearly established.  See e.g., Carey v.

10   Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state

11   sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear

12   prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly

13   established law when spectators' conduct is the alleged cause of bias injection).  The established

14   Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other

15   controlling federal law, as opposed to a pronouncement of statutes or rules binding only on

16   federal courts.  Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

17   The state courts need not have cited to federal authority, or even have indicated awareness

18   of federal authority in arriving at their decision.  Early, 537 U.S. at 8, 123 S.Ct. at 365.  Where

19   the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the

20   federal court will independently review the record in adjudication of that issue.  "Independent

21   review of the record is not de novo review of the constitutional issue, but rather, the only method

22   by which we can determine whether a silent state court decision is objectively unreasonable."

23   Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

24   When a state court decision on a petitioner's claims rejects some claims but does not

25   expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

26   the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___, 133 S.Ct.

27   1088, 1091 (2013).   However, if the state courts have not adjudicated the merits of the federal

28   issue, no AEDPA deference is given; the issue is reviewed *de novo* under general principles of

6

1  federal law.  Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012).

2  II.  "Willfulness" Instruction

3      A.  Background

4      At trial, the prosecution moved *in limine* to have the jury instructed that forgetting to

5  register by itself was not a defense to failing to annually update petitioner's registration.  The trial

6  court agreed but stated this *did not* preclude the defense from presenting evidence of substantial

7  mental impairment or other reasons that might have impaired his memory.  Petitioner's trial

8  counsel objected that the instruction "has a tendency to misdirect the jury away from the willful

9  definition."  The prosecution acknowledged that California law allowed a defense based on such a

10  deteriorating cognitive ability that a person cannot comply with the registration requirements.

11  Resp't's Lod. Doc. 7 at 7.

12      The trial court instructed the jury with a modified version of CALCRIM NO. 1170, stating

13  the People had to prove defendant "actually knew" he had a duty to register and "willfully failed

14  to annually update his registration" within five working days of his birthday, stating that wilfully

15  meant "willingly or on purpose," and stating, "[f]orgetting to register by itself is not a defense to a

16  charge of willful failure to register."  Resp't's Lod. Doc. 7 at 8.

17      Petitioner claims that the trial court erred by giving the above-described, modified version

18  of CALCRIM NO. 1170 to the jury.  Petitioner argues that this instruction: 1) misstated

19  California law because People v. Barker, 24 Cal. 4th 345 (2004) and People v. Sorden, 36 Cal.4th

20  65 (2005) expressly left undecided whether forgetfulness resulting from a psychological condition

21  might negate the willfulness element in a Section 290 violation; and 2) allowed jurors to find

22  petitioner guilty even if they believed he forgot to register due to his mental impairments, thereby

23  removing an element of the offense that the prosecution had to prove beyond a reasonable doubt.

24      The California Court of Appeal rejected petitioner's claim reasoning as follows:

25      A defendant must have actual knowledge of the sex offender
       registration duties before he or she can be found guilty of having

26      willfully violated them.  (People v. Garcia (2001) 25 Cal.4th 744,
       752.)  In People v. Barker (2004) 34 Cal.4th 345 (Barker), Barker

27      claimed he forgot to register, and therefore did not have the
       requisite actual knowledge.  The California Supreme Court

28      disagreed: "Admittedly, the argument that a person cannot be said

to know something if he or she has forgotten it, for whatever reason, does have a superficial plausibility.  However, . . . [i]t is simply inconceivable the Legislature intended just forgetting to be a sufficient excuse for failing to comply with section 290's registration requirements."  (Barker, supra, 34 Cal.4th at pp. 356-357.)  "[C]ountenancing excuses of the sort given by defendant that he just forgot about his registration obligation 'would effectively "eviscerate" the statute[.]'"  (Barker, supra, at p. 358.)  Barker declined to address "whether forgetfulness resulting from, for example, an acute psychological condition, or a chronic deficit of memory or intelligence might negate the willfulness required[.]"  (Ibid.)

People v. Sorden (2005) 36 Cal.4th 65 (Sorden) clarified the issue.  Sorden suffered from severe depression, which he claimed made it difficult for him to remember to register.  (Sorden, supra, 36 Cal.4th at pp. 69-70.)  Sorden held that "a defendant charged with violation of section 290 may present substantial evidence that, because of an involuntary condition--temporary or permanent, physical or mental--he lacked actual knowledge of his duty to register."  (Sorden, supra, at p. 72, emphasis added.)  Such evidence may negate the People's showing of willfulness, provided the mental condition is sufficient to "nullify[] knowledge of one's registration obligations."  (Id. at pp. 69, 73.)  "Severe Alzheimer's disease is one example that comes to mind; general amnesia induced by severe trauma is another."  (Id. at p. 69.)

In Sorden's case:

"There is no question but that he knew of his duty to register.  He simply claimed his depression made it more difficult for him to remember to register.  However, life is difficult for everyone.  As a society, we have become increasingly aware of how many of our fellow citizens must cope with significant physical and mental disabilities.  But cope they do, as best they can, for cope they must.  So, too, must defendant and other sex offenders learn to cope by taking the necessary measures to remind themselves to discharge their legally mandated registration requirements.  It is simply not enough for a defendant to assert a selective impairment that conveniently affects his memory as to registering, but otherwise leaves him largely functional."  (Sorden, supra, 36 Cal.4th at p. 72.)

In People v. Bejarano (2009) 180 Cal.App.4th 583 (Bejarano), the jury was instructed: "'Only the most disabling conditions may negate the willfulness element of this offense.  Some examples would be severe Alzheimer's disease . . . [and] general amnesia induced by severe trauma.  [¶]  Severe depression does not excuse a convicted sex offender from the registration requirements of Penal Code section 290.'"  (Bejarano, supra, 180 Cal.App.4th at p. 589.)  Bejarano claimed he suffered from depression.  (Bejarano, supra, at p. 589.)  The Bejarano court agreed the instruction given was erroneous, but not for the reason stated by Bejarano; instead, it "omitted the important notion [from Sorden] that the significantly disabling physical or mental condition had to deprive the defendant

8

of knowledge of his duty to register." (Id. at p. 590.)

There was no evidence at trial that defendant fit within the Sorden category of persons whose mental state negates a showing of actual knowledge of the duty to register. Defendant spent five months at Atascadero State Hospital, ending in February 2004, seven years before he violated the registration requirement; notably, he had successfully registered several times since then. No evidence was presented at trial about why he was sent to Atascadero, and there was no evidence he had any hospitalizations--or even any medical treatment--since his stay at Atascadero ended. Indeed, in the reply brief defendant concedes he "was a nominally functioning member of society."

A trial court must instruct on a defense "only if substantial evidence supports the defense." (People v. Shelmire (2005) 130 Cal.App.4th 1044, 1054-1055.) Because there was no evidence meeting the Sorden standard, the trial court properly instructed that forgetting "by itself" was not a defense.

Nor do we accept defendant's view that the instruction permitted the jury to convict him even if it found his mental state precluded actual knowledge. The jury was instructed that, in order to prove willfulness, the People had to show defendant did something "willingly or on purpose." The challenged instruction did not tell the jury to ignore defendant's mental state, it merely stated--correctly--that forgetting to register was not "by itself" a defense. The unrebutted arguments of defense counsel made the defense theory clear. (See People v. Hughes (2002) 27 Cal.4th 287, 363 ["defense counsel's unrebutted closing argument . . . emphasized and 'pinpointed' for the jury the defense theory" that intent to rob was formed after killing].) Although the People vigorously (and properly) contested whether the facts supported the defense, they did not challenge its viability.

In short, the trial court's instruction that forgetting "by itself" was not a defense was correct on these facts.

Holsey, 2012 WL 4857576, at **3-5.

B. Applicable Legal Principles

A challenge to a jury instruction solely as an error of state law does not state a claim cognizable in a federal habeas corpus action. See Estelle v. McGuire, 502 U.S. 62, 71–72, 112 S.Ct. 475 (1991) (habeas corpus is unavailable for alleged error in the interpretation or application of state law); see also Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir.1983); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.1985). The standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 62. In order for error in the state trial

9

1    proceedings to reach the level of a due process violation, the error had to be one involving

2    "fundamental fairness."  Id. at 73.  The Supreme Court has defined the category of infractions that

3    violate fundamental fairness very narrowly.  Id.

4         In order to establish a due process violation, petitioner must show both a defect in the

5    instructions and a "reasonable likelihood" that the jury applied the instruction in a way that

6    violates the Constitution, such as relieving the state of its burden of proving every element

7    beyond a reasonable doubt.  Waddington v. Sarausad, 555 U.S. 179, 190 (2009); see also

8    Sandstrom v. Montana, 442 U.S. 510, 520, 99 S.Ct. 2450 (1979); Medley v. Runnels, 506 F.3d

9    857, 865-66 (9th Cir. 2007) (en banc) (state law provides elements of a crime, but once elements

10   are defined in state law, due process requires that every element be proven beyond a reasonable

11   doubt).  Petitioner must show that the ailing instruction by itself so infected the entire trial that the

12   resulting conviction violates due process.  Estelle, 502 U.S. at 72.  Additionally, the instruction

13   may not be judged in artificial isolation, but must be considered in the context of the instructions

14   as a whole and the trial record.  Id.  The court must evaluate jury instructions in the context of the

15   overall charge to the jury as a component of the entire trial process.  See United States v. Frady,

16   456 U.S. 152, 169, 102 S.Ct. 1584 (1982).  Furthermore, even if it is determined that the

17   instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the

18   unconstitutional instruction had a substantial influence on the conviction and thereby resulted in

19   actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993), which is

20   whether the error had substantial and injurious effect or influence in determining the jury's

21   verdict.  See Hedgpeth v. Pulido, 555 U.S. 57, 61–62, 129 S.Ct. 530 (2008) (per curiam);

22   California v. Roy, 519 U.S. 2,6, 117 S.Ct. 337 (1996).

23        C.  Analysis

24             1.  Exhaustion

25        As an initial matter, respondent argues that this claim is unexhausted because petitioner

26   bases it on new legal theories.  In particular, respondent contends that petitioner did not raise the

27   following arguments in his petition for review to the California Supreme Court: (1) failing to

28   register as a sex offender is not a strict liability crime and requires proof of an intent element; and

1  (2) the California Court of Appeal wrongly concluded that no evidence supported a mental

2  defense to the element of willfulness.[1]  Petitioner asserts that this claim is virtually identical to the

3  one he presented in his petition for review to the California Supreme Court and that these

4  arguments merely supplement his claim.

5      The exhaustion of available state remedies is a prerequisite to a federal court's

6  consideration of claims presented in habeas corpus proceedings.  See Rose v. Lundy, 455 U.S.

7  509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); 28 U.S.C. § 2254(b); see also Woodford v. Ngo, 548

8  U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).  A petitioner satisfies the exhaustion

9  requirement by providing the highest state court with a full and fair opportunity to consider all

10  claims before presenting them to the federal court.  Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct.

11  509, 30 L.Ed.2d 438 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.1985), cert.

12  denied, 478 U.S. 1021, 106 S.Ct. 3336, 92 L.Ed.2d 741 (1986).  A petitioner is deemed to have

13  exhausted state remedies if he makes a fair presentation of his federal claims to the state courts.

14  Peterson v. Lampert, 319 F.3d 1153, 1155–56.  Fair presentation requires that a state's highest

15  court has "a fair opportunity to consider [an appellant's constitutional claim] and to correct that

16  asserted constitutional defect."  Picard, 404 U.S. at 276; see also Hiivala v. Wood, 195 F.3d 1098,

17  1106 (9th Cir.1999) (requiring that petitioner "alert" the state courts of the constitutional issues

18  that are on appeal).

19      The record indicates that petitioner presented his Sandstrom claim, to the state courts,

20  alerting them of the constitutional issues that were on appeal.  In particular, petitioner argued

21  before both the state appellate and supreme court that the jury instruction removed an element the

22  prosecution had to prove beyond a reasonable doubt under state and federal law.  (Resp't's Lod.

23  Doc. 4 at 8; Resp't's Lod. Doc. 8 at 3.)  Accordingly, the court is satisfied that petitioner fairly

24  presented his Sandstrom claim to the state courts.

25  ///

26

27  [1]      As part of his claim of instructional error, petitioner also argues that his trial attorney
rendered ineffective assistance by failing to offer evidence to negate the "willfulness" element of

28  the charge.  The undersigned addresses that portion of petitioner's claim in Section III below.

2.  Petitioner's Instruction Claim

It was not reasonably likely that the jury applied the instruction in a way that relieved the state of its burden of proving every element of the crime beyond a reasonable doubt.  See Sarausad, 555 U.S. at 190-91.  It is unclear whether failing to re-register as a sex offender on one's birthday is a strict liability crime and therefore does not require a proof of an intent element, but simply labeling a crime as "strict liability" does not end the matter.[2]  Indeed, the Ninth Circuit in a similar case has come close to characterizing the registration statute at issue here as a strict liability crime:

> Although we independently evaluate federal constitutional claims, in doing so we are bound by the California courts' interpretations of California law. See Powell v. Lambert, 357 F.3d 871, 874 (9th Cir.2004). Accordingly, we follow the Court of Appeal in finding that violation of the annual registration requirement of § 290(a)(1)(D) alone is "an entirely passive, harmless, and technical violation of the registration law."  Carmony, 26 Cal.Rptr.3d at 372.FN10

Gonzalez v. Duncan, 551 F.3d 875, 885-86 (9th Cir. 2008).  The Ninth Circuit also noted:

> We note that the Carmony court's analysis of that provision comports with common sense, particularly as applied to the circumstances of this case. To convict Gonzalez of violating § 290(a)(1)(D), the jury found "beyond a reasonable doubt that the defendant had actual knowledge of his duty to register annually within five working days of his birthday and that he knew what act was required to be performed." See People v. Garcia, 25 Cal.4th 744, 752, 107 Cal.Rptr.2d 355, 23 P.3d 590 (2001) ("In a case like this, involving a failure to act, we believe section 290 requires the defendant to actually know of the duty to act."). While violation of § 290(a)(1)(D) requires "willfulness," or "actual knowledge of the duty to register," id., forgetting to update the registration during the prescribed five working days after the registrant's birthday is not a defense. Barker, 34 Cal.4th at 350, 18 Cal.Rptr.3d 260, 96 P.3d 507 ("forgetting the mandatory registration requirement of section 290 is simply not a legitimate defense to the charge of willfully failing to register"). As a result, it is possible that Gonzalez violated § 290(a)(1)(D) through ordinary negligence by forgetting to register during the mandated five working day period. Because the record suggests that Gonzalez made a good faith effort to comply with the registration law, we find that little or no moral culpability attaches to his violation of § 290(a)(1)(D).

---

[2]    Neither of the parties address whether a Sorden defense is an affirmative defense wherein petitioner must proactively prove that his mental impairment objectively prevented petitioner from registering a timely fashion.  Nonetheless, the undersigned presumes that a Sorden "defense" is not an affirmative defense.

1   Id. at 886, n.10; see also Plasencia-Ayala v. Mukasey, 516 F.3d 738, 747 (9th Cir. 2008)

2   (characterizing Nevada's sex offender registration statute as providing for "strict liability"

3   because a defendant could be convicted "for simply forgetting to register").[3]

4        Generally, crimes committed with only ordinary negligence lack sufficient *mens rea* for

5   due process purposes.  However, an exception is *malum prohibitum* crimes such as public welfare

6   offenses.  See the exhaustive analysis on the subject in United States v. Coroba- Huncajie, 825 F.

7   Supp. 485, 496-497 (E.D.N.Y. 1993).  A point in Gonzalez was that the type of crime for failure

8   to re-register on one's birthday was a minor public welfare offense the violation of which

9   subjected one to criminal liability even if no intent were required, *i.e.*, negligence would suffice.

10  Thus, even if California's statute had no intent requirement, the statute would stand as valid.

11       The trial court instructed the jury as to the elements of failure to update an annual sex

12  offender registration and repeatedly advised that the jury must not only find that the defendant

13  acted or failed to act as required but also that he did so with a particular mental state:

14            The People must prove not only that the defendant did the acts
             charged or failed to do a required act, but also that he acted or failed
15           to act with a particular mental state.  The instructions for the crime
             of failure to update an annual sex offender registration explains the
16           mental state required.

17  (Resp't's Lod. Doc. 3 at 221.)

18            The crime charged in this case requires proof of the union or joint
             operation of act and wrongful mental state.  For you to find a
19           person guilty of failure to update annual sex offender registration,
             that person must not only intentionally commit the prohibited act or
20           intentionally failed to do the required act, but must do so with a
             specific mental state.  The act and the specific mental state required
21           are explained in the instructions for that crime.

22  (Resp't's Lod. Doc. 3 at 223-24.)

23            The defendant is charged in Count One with failure to update
             annual sex offender registration in violation of Penal Code Section
24           290.012(a).  To prove that the defendant is guilty of this crime, the
             People must prove:
25
             Number 1:  The defendant was previously convicted of a felony sex
26           crime that required him to register.

27   _____

[3] Plasencia-Ayala was overruled on other grounds in Marmolejo-Campos v. Holder, 558 F.3d
28  903, 911 (9th Cir. 2009) (en banc).

2.  The defendant resided in the city of Roseville in California.

3.  The defendant actually knew he had a duty to register as a sex offender living at 332 Main Street, Number 1, and that he knew he had to register within five working days of his birthday, and

4.  The defendant willfully failed to annually update his registration as a sex offender with the Roseville Police Department within five working days of his birthday.

Someone commits an act willfully when he or she does it willingly or on purpose.  Forgetting to register by itself is not a defense to a charge of willful failure to register.

Resp't's Lod. Doc. 3 at 227.

Based on its analysis and interpretation of Barker, Sorden, and the facts before the trial court, the state appellate court found that the jury instruction on willfulness was correct under California state law.  "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 604 (2005); Gonzalez, 551 F.3d at 885. However, the federal due process issue here is not whether California law was followed, but whether a penal statute which both purports to require intent, but then does not require it, so vitiates the intent requirement as to violate due process.  And as Gonzalez pointed out, one could easily theorize a situation where a person was negligently distracted from his obligations such that he could not be said to have acted willfully as that term is known in common language.[4] There is simply no logical way around the fact that if one does not perform a required act because the requirement is innocently or negligently erased from one's consciousness for a time, the person "forgets" in common parlance, negligently or without culpability.  The added complexity includes the fact that petitioner's conviction was entirely valid from a due process standpoint without the intent requirement, i.e., a strict liability statute in this context of failing to re-register on one's birthday is a relatively minor, public welfare offense, Gonzalez, 551 F.3d at 884, and not

---

[4] Take, for example, a not so hypothetical situation where a lawyer temporarily "forgets" about a scheduled hearing because of a protracted, distracting, emergency phone call on another case just prior to the time to leave for the hearing, causing him to miss the hearing.  While the attorney might be considered negligent for not having an audible alarm to counter such distraction, it is clear that he did not "willfully" or "on purpose" miss the hearing, i.e., made the conscious decision to miss the hearing because the phone call was more important.

1    a due process problem.

2            Nor does the <u>Sorden</u> "defense" really have anything to do with the willfulness aspect of

3    the California statute.  As the state appellate court pointed out, the evidence indicates that

4    petitioner did not fit within the "<u>Sorden</u> category of persons whose mental state negates a

5    showing of *actual knowledge of the duty to register*."  <u>Holsey</u>, 2012 WL 4857576, at *4

6    (emphasis in original and added).  The "defense" encompassing wholly debilitating conditions,

7    whether permanent or temporary, is clearly aimed at that part of the statute which requires an

8    *awareness* of the duty to register at the required time, *i.e.*, # 3 of the instruction, not the

9    willfulness in failing to register, #4.

10           In sum, an instruction which requires willful intent, but then essentially provides that mere

11   negligence is sufficient for conviction, creates a due process ambiguity error.

12            Nevertheless, the undersigned finds that any error in the "willfulness" ambiguity of this

13   jury instruction was harmless; it did not substantially affect the verdict.  Petitioner's claim that he

14   forgot about the requirement, while at the same time consciously waiting for a reminder of the

15   requirement he "forgot," is transparently bogus.  This is so especially in light of the fact that he

16   was without question aware of his need to reregister on his birthday having done so twice on

17   previous occasions.  If the jury found, as it did, that petitioner was aware of his duty to register,

18   there was simply no legitimate evidence of a negligent, temporary forgetting of this duty in the

19   context of this case.  The jury would have found that petitioner's failure to register was willful,

20   "on purpose," even with the ambiguity present in the instructions.

21           Accordingly, petitioner's assertion that the instruction misstated California law is without

22   merit, and his claim that the challenged instruction was defective must be denied.

23           Petitioner also argues the court of appeal's conclusion that the record did not support a

24   <u>Sorden</u> defense was objectively unreasonable and incorrect.  In support, petitioner cites his

25   lengthy history of mental illness and instability which include several visits to the Sacramento

26   County Mental Health Treatment Center and a seven-month stay in Atascadero State Hospital

27   from September 2003 to April 2004.  Resp't's Lod. Doc. 1 at 82-84.  On the contrary and again,

28   as the state appellate court pointed out, the evidence indicates that petitioner did not fit within the

1   "Sorden category of persons whose mental state negates a showing of *actual knowledge* of the

2   duty to register." Holsey, 2012 WL 4857576, at *4.  Petitioner had successfully registered

3   several times since February 2004, petitioner's last hospitalization.  When a police officer told

4   petitioner that he had failed to comply with the registration requirement, petitioner replied that he

5   had forgotten and was waiting for a reminder from the Roseville Police Department.  Indeed,

6   petitioner never claimed to be ignorant of his duty to register.  Resp't's Lod. Doc. 3 at 83-84, 91-

7   92, 96-97.  Considering the record as a whole, the court of appeal's conclusion that the evidence

8   did not support a Sorden defense was not objectively unreasonable. [5]

9   III.      Ineffective Assistance of Counsel

10          Petitioner claims that he was deprived effective assistance of counsel.  He contends that

11   trial counsel was ineffective because he did not obtain a pre-guilt phase psychological evaluation

12   of petitioner, suggesting that this evaluation "could have bolstered" petitioner's argument that his

13   failure to register was not willful.  Petitioner also contends that trial counsel failed to obtain a

14   post-trial psychological report that explored and substantiated petitioner's claim he forgot to

15   register.  Finally, petitioner contends that trial counsel failed to present any evidence of

16   petitioner's mental health problems during the guilt phase because trial counsel misunderstood

17   the decisions in Barker and Sorden.

18          A.  Applicable Legal Principles

19          The test for demonstrating ineffective assistance of counsel is set forth in Strickland v.

20   Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  First, a petitioner must show

21   that, considering all the circumstances, counsel's performance fell below an objective standard of

22   reasonableness.  Strickland, 466 U.S. at 688.  To this end, the petitioner must identify the acts or

23   omissions that are alleged not to have been the result of reasonable professional judgment.  Id. at

24   690.  The federal court must then determine whether in light of all the circumstances, the

25   identified acts or omissions were outside the wide range of professionally competent assistance.

26   ─────────────

27   [5]      Petitioner does not appear to argue that the trial court erred in *failing* to give an instruction
     on the Sorden defense.  Even if he does press this argument, petitioner never claimed to lack
     actual knowledge of his duty to register and successfully registered in the past.  With these facts,

28   a Sorden defense would not have helped petitioner despite his history of mental health issues.

1   Id.  "We strongly presume that counsel's conduct was within the wide range of reasonable

2   assistance, and that he exercised acceptable professional judgment in all significant decisions

3   made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir.1990), citing Strickland, 466 U.S. at 689.

4          Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at 693.

5   Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional

6   errors, the result of the proceeding would have been different.  A reasonable probability is a

7   probability sufficient to undermine confidence in the outcome."  Id.  "That requires a

8   'substantial,' not just 'conceivable,' likelihood of a different result."  Cullen v. Pinholster, 131 S.

9   Ct. 1388, 1403, (2011) quoting Richter, 562 U.S., at ----, 131 S. Ct., at 791.

10          The Supreme Court has emphasized the importance of giving deference to trial counsel's

11   decisions, especially in the AEDPA context:

12              In Strickland we said that "[j]udicial scrutiny of a counsel's
               performance must be highly deferential" and that "every effort
13              [must] be made to eliminate the distorting effects of hindsight, to
               reconstruct the circumstances of counsel's challenged conduct, and
14              to evaluate the conduct from counsel's perspective at the time." 466
               U.S., at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 [ ]. Thus, even when a
15              court is presented with an ineffective-assistance claim not subject to
               § 2254(d)(1) deference, a [petitioner] must overcome the
16              "presumption that, under the circumstances, the challenged action
               'might be considered sound trial strategy.' " Ibid. (quoting Michel
17              v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83[ ]
               (1955)).
18
               For [petitioner] to succeed, however, he must do more than show
19              that he would have satisfied Strickland's test if his claim were being
               analyzed in the first instance, because under § 2254(d)(1), it is not
20              enough to convince a federal habeas court that, in its independent
               judgment, the state-court decision applied Strickland incorrectly.
21              See Williams, supra, at 411, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed.
               398[ ]. Rather, he must show that the [ ]Court of Appeals applied
22              Strickland to the facts of his case in an objectively unreasonable
               manner.
23

24   Bell v. Cone, 535 U.S. 685, 698–699, 122 S.Ct. 1843, 1852 (2002).

25          B.  Analysis

26          Petitioner raised several instances where trial counsel's actions should have been

27   different.  However, petitioner failed to show that trial counsel's representation fell below an

28   objective standard of reasonableness and how he was prejudiced by trial counsel's alleged

ineffectiveness.

On direct appeal, the state court of appeal denied petitioner's claim, reasoning as follows:

> In a separate but logically connected claim, defendant asserts the reason evidence supporting a <u>Sorden</u> defense was not presented was due to defense counsel's ignorance of the law and failure to prepare for trial. But the record on appeal does not support this contention.
>
> The record shows trial counsel was aware of the defense, which was discussed on the record before trial, as defendant concedes. Posttrial, defense counsel stated on the record that "I saw that issue as being something to be addressed in the <u>Romero</u> motion and at sentencing more so than at trial, and so that was the reason I approached that issue the way I did at trial." This statement does not mean defense counsel was ignorant of the fact that, theoretically, a defendant's mental problems could be used both as a substantive defense to the charge of failure to register and as mitigation evidence for <u>Romero</u> or sentencing purposes. As we explained ante, the evidence presented to the jury did not meet the strict <u>Sorden</u> standard for an "I forgot" defense, and it appears trial counsel was aware of that fact, which rationally explains why no <u>Sorden</u> instruction was requested. No incompetence is demonstrated.
>
> Further, the pretrial <u>Romero</u> motion, which included information not presented to the jury, did not show defendant lacked an actual awareness of the duty to register. At best, the evidence available to defense counsel showed defendant had a history of psychotic hallucinations (possibly drug-induced) predating his state hospital release—seven years before the current offense—with four intervening successful registrations in Roseville. Indeed, when defendant was questioned upon his arrest, he stated he was waiting for a reminder from the police. Far from showing a lack of ability to remember his duty to register, this shows defendant's general awareness of that duty, and his failure to take steps to satisfy that duty.
>
> Even two posttrial psychiatric evaluations (which, of course, were not presented to the jury) did not support a <u>Sorden</u> defense. Before ruling on the <u>Romero</u> motion, the trial court appointed a psychiatrist, Dr. Roof, to examine defendant to determine whether he posed a threat to society. The ensuing report by Dr. Roof noted defendant's claim that he had been on disability for four years due to memory loss, but found no evidence of "cognitive impairment" during the examination. When defense counsel questioned Dr. Roof's report, the trial court granted a continuance to allow defense counsel to obtain a second opinion, noting how important the issue was to the defense.
>
> Dr. Nelson's report found "no evidence to indicate a formal thought disorder" but did diagnose defendant as psychotic, found his intellect in the "low average range" and found "some degree of memory impairment[.]" Dr. Nelson also opined "that the defendant's reported problems with his memory are genuine and

could possibly impact his ability to accurately remember his registration requirements."

The latter opinion of Dr. Nelson edged toward impermissible diminished capacity evidence. (See People v. Vieira (2005) 35 Cal.4th 264, 292; Bejarano, supra, 180 Cal.App.4th at pp. 588–589.) In any event, at best for defendant, the opinion shows "a condition that falls short of nullifying knowledge of one's registration obligations." (Sorden, supra, 36 Cal.4th at p. 73.) "It is simply not enough for a defendant to assert a selective impairment that conveniently affects his memory as to registering, but otherwise leaves him largely functional." (Sorden, supra, at p. 72.) A condition that Dr. Nelson believed "could possibly impact his ability to accurately remember his registration requirements" but otherwise left defendant capable of functioning in society, registering four times in the recent past, and knowing enough to tell the arresting officers that he forgot and was waiting for a reminder, is simply insufficient to successfully assert a defense under the Sorden standard.

Holsey, 2012 WL 4857576, at **5-6.

Petitioner contends that counsel should have had a pretrial psychological evaluation. However, this argument fails because petitioner failed to show what such an evaluation would have produced (except the adverse- to- petitioner post-trial evaluation). Petitioner's claim that counsel was ineffective for failure to retain an expert also fails because petitioner did not propose an expert that would have testified on his behalf and did not produce what such an expert would have testified about. Finally, petitioner further claims that counsel was ineffective for failure to produce evidence of petitioner's mental impairments. This claim also fails because petitioner did not identify specific evidence that would have created a reasonable probability of a different result. See United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987).

Also and as discussed by the Court of Appeal, petitioner's claim lacks merit because he is unable to show prejudice pertaining to his conviction for failure to register. The evidence does not support petitioner's theory that his involuntary mental condition negates the awareness element. Indeed, petitioner appears to concede that the outcome of his trial would not have been different:

Counsel could have argued to the jury that petitioner's lengthy history of psychosis, schizophrenia, hospitalizations and medications affected his memory and rendered his failure to register "unwillful." Whether the argument would have been successful [is] speculative, but it was a factual decision for the jury to decide. Any

19

1
2
3

> argument that based on his medical and psychiatric history, petitioner's failure to register was not willful was better than no argument at all and the complete forfeiture of any defense whatsoever.

4  (Pet.'s Opening Brief at 16.)  Petitioner's mere contention that evidence of his mental limitations

5  might have been successful does not meet the level of prejudice required to prevail—a substantial

6  likelihood of a different result.  The Court of Appeals did not apply <u>Strickland</u> in an objectively

7  unreasonable manner.  <u>See</u> <u>Bell</u>, 52 U.S. at 699, 122 S.Ct. 1843, 152 L.Ed.2d 914.  Therefore,

8  petitioner's claim of ineffective assistance must be denied.

9  IV.    <u>Sixth Amendment Right to Counsel – Conflict of Interest</u>

10        At the final sentencing hearing, defense counsel advised the court that petitioner had

11  contacted him and indicated a desire to have a new trial.  Defense counsel represented that he saw

12  no statutory grounds for a new trial but acknowledged that such a motion could be based on an

13  ineffective assistance of counsel claim.  Defense counsel also voiced to the court petitioner's

14  concerns regarding five areas of dissatisfaction with defense counsel's representation of him

15  throughout the trial.  Petitioner claims that, prior to the sentencing hearing, the trial court should

16  have conducted a <u>Marsden</u> hearing and appointed him new counsel.

17        The California Court of Appeal rejected petitioner's claim as follows:

18
19

> Defendant contends the trial court erred by not appointing him conflict-free counsel and by not conducting a <u>Marsden</u> hearing. But defendant never sought replacement of counsel.

20
21
22
23
24
25
26

> In <u>People v. Sanchez</u> (2011) 53 Cal.4th 80 (<u>Sanchez</u>), our Supreme Court held that when a defendant seeks to withdraw a plea because of incompetence of counsel, "a trial court must conduct ... a <u>Marsden</u> hearing only when there is at least some clear indication by the defendant, either personally or through counsel, that the defendant wants a substitute attorney." (<u>Sanchez</u>, supra, 53 Cal.4th at p. 84.) <u>Sanchez</u> quoted an earlier case that arose after a jury trial. That earlier case, referencing the duty to hold a <u>Marsden</u> hearing, stated: "We do not necessarily require a proper and formal legal motion, but at least some clear indication by defendant that he wants a substitute attorney. The record in this case reveals no such indication by defendant." (<u>People v. Lucky</u> (1988) 45 Cal.3d 259, 281, fn. 8, approved by <u>Sanchez</u>, supra, at pp. 87–88, 89–90.)

27  ///

28  ///

20

1

> Accordingly, "Statements by the defendant that he or she is dissatisfied with certain aspects of counsel's handling of the case absent a request for substitution of counsel [do] not trigger the court's duty." (Cal. Judges Benchguides, Benchguide 54, Right to Counsel Issues (2010) § 54.23, p. 54–25; see People v. Gay (1990) 221 Cal.App.3d 1065, 1070 [Gay moved for a new trial based on incompetence of counsel but did not ask for new counsel; the appellate court held: "A trial judge should not be obligated to take steps toward appointing new counsel where defendant does not even seek such relief"].)

> Here, there was never a "clear indication by the defendant, either personally or through his current counsel" that defendant wanted a new attorney. (Sanchez, supra, 53 Cal.4th at p. 84; see id. at pp. 90, 91.) Therefore, the trial court was not required to conduct a Marsden hearing or appoint new counsel.

Holsey, 2012 WL 4857576, at *7.

The Supreme Court has held that a criminal defendant has a constitutional right to assistance of conflict-free counsel. Strickland, 466 U.S. at 668, 104 S.Ct. 2052. To establish a Sixth Amendment violation based on a conflict of interest, petitioner must show: (1) that his trial counsel actively represented conflicting interests, and (2) that an actual conflict of interest adversely affected his performance. Mannhalt v. Reed, 847 F.2d 576, 579-80 (9th Cir. 1988), citing Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 1719 (1980). "[A]n actual conflict of interest means precisely a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties." Mickens v. Taylor, 535 U.S. 162, 171, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002).

As an initial matter, Petitioner's claim fails because no Supreme Court decision clearly establishes that a state court must appoint substitute counsel whenever a motion for a new trial rests upon the alleged incompetence of counsel. See Jackson v. Ylst, 921 F.2d 882, 888 (9th Cir. 1990) ("[U]nder the law of this circuit, there is no automatic right to a substitution of counsel simply because the defendant informs the trial court that he is dissatisfied with appointed counsel's performance."). Petitioner concedes that he "did not expressly request his trial counsel be relieved," suggesting that the trial court, *sua sponte*, should have conducted a Marsden hearing or appointed new counsel to assist in his motion for new trial. The Court of Appeals' denial of this claim was not an unreasonable application of clearly established Supreme Court authority.

21

1    Petitioner cites United States v. Del Muro, 87 F.3d 1078 (9th Cir. 1996) as supporting his

2    claim.  However, Del Muro is distinguishable because, unlike the instant case, 1) the defendant in

3    Del Muro filed a motion for new trial; and 2) the court held an evidentiary hearing requiring trial

4    counsel to argue Del Muro's motion.  Id. at 1080.  The Ninth Circuit held that by forcing trial

5    counsel to prove his own ineffectiveness, "the district court created an inherent conflict of

6    interest," finding that "[t]here was an actual, irreconcilable conflict between Del Muro and his

7    trial counsel at the hearing."  Id.  In this instance, petitioner did not make a motion for new trial

8    nor did the court hold an evidentiary hearing requiring petitioner's trial counsel to argue the

9    motion.  Accordingly the instant case is distinguishable from Del Muro in that there was no

10   actual, irreconcilable conflict between petitioner and his trial counsel by virtue of trial counsel

11   being forced to argue his own ineffectiveness at an evidentiary hearing.

12       In addition, petitioner has failed to demonstrate that an actual conflict otherwise existed

13   between himself and trial counsel, how that asserted conflict adversely affected trial counsel's

14   work, or that, had trial counsel not been adversely impacted by the conflict, the outcome of his

15   trial might have been different.  Again, petitioner has presented no evidence, save for adverse

16   evidence, which would establish that his mental condition was such that he was unaware of his

17   duty to register.  Because a mere possibility of a conflict of interest is insufficient to sustain a

18   claim of ineffective assistance of counsel, this claim must be denied.  The decision of the

19   California Court of Appeal was not AEDPA unreasonable.

20   V.    Failure to Dismiss Prior Strike Convictions

21       Petitioner claims that the trial court abused its discretion in not dismissing petitioner's

22   prior strike convictions.  The state court of appeal rejected this claim as follows:

23           A trial court may strike a felony conviction for purposes of
             sentencing if and only if the defendant falls outside the spirit of the
24           Three Strikes law. (People v. Williams (1998) 17 Cal.4th 148, 161
             (Williams).) The trial court "must consider whether, in light of the
25           nature and circumstances of his present felonies and prior serious
             and/or violent felony convictions, and the particulars of his
26           background, character, and prospects, the defendant may be deemed
             outside the scheme's spirit, in whole or in part, and hence should be
27           treated as though he had not previously been convicted of one or
             more serious and/or violent felonies." (Williams, supra, 17 Cal.4th
28           at p. 161.)

Dismissal of a strike is a departure from the sentencing norm, and, as such, we may not reverse the denial of a <u>Romero</u> motion unless the defendant shows the decision was "so irrational or arbitrary that no reasonable person could agree with it." (<u>Carmony I</u>, supra, 33 Cal.4th at p. 377.) Reversal is justified where the trial court was unaware of its discretion or applied improper factors. (<u>Carmony I</u>, supra, at p. 378.) But where the trial court knew of its discretion, "'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling[.]'" (<u>Ibid.</u>)

Here, defendant could be a poster child for the Three Strikes law. (See <u>Carmony I</u>, supra, 33 Cal.4th at pp. 378–379.) He has a continuous record of criminality beginning with a burglary at age 17. His first felony was a violent sexual assault in 1985, and in 1995 he flagrantly propositioned a 10–year–old child to suck his penis. He has been to prison three times, with multiple parole violations, yet his criminality persists. The present offense, committed a year after defendant's release from parole, represent's defendant's third conviction for violating the sex offender registration laws. He is supported by social security due to his mental problems. He has no prospects as the record shows.

Neither the 1985 or 1992 strikes were remote, because defendant had an unbroken record of convictions, incarcerations, and parole violations, since then. (See <u>Williams</u>, supra, 17 Cal.4th at p. 163 ["not significant" that 13 years passed between the prior and current felony because Williams did not refrain from criminality]; <u>People v. Gaston</u> (1999) 74 Cal.App.4th 310, 321 [1981 strikes not remote in light of record that "substantially spanned his entire adult life"].) Defendant's claim that his crimes were showing "de-escalation" over time does not change their continuity, nor is the claim persuasive in any case, in light of Dr. Roof's report—presumably credited by the trial court over Dr. Nelson's somewhat more favorable report—that defendant presents a "high relative risk" of reoffense.

Defendant's reliance on <u>People v. Cluff</u> (2001) 87 Cal.App.4th 991 (<u>Cluff</u>) is unpersuasive. Defendant emphasizes that he had not moved from his last registration address, and therefore the current offense is a mere "technical" violation as in <u>Cluff</u>.  In <u>Cluff</u>, the trial court drew the factually unsupported conclusion that Cluff had obscured where he could be found, although he was living at his last registered address, therefore the appellate court remanded for a new <u>Romero</u> hearing. (<u>Cluff</u>, supra, 87 Cal.App.4th at pp. 1001–1004.)

<u>Cluff</u> does not support the proposition that a mere "technical" nature of a violation of the registration laws brings a person outside the spirit of the Three Strikes law. In <u>Carmony I</u>, our Supreme Court upheld the denial of a <u>Romero</u> motion for a registrant whose current offense was failing to update a registration, but who had not changed his residence since his last registration. (<u>Carmony I</u>, supra, 33 Cal.4th at pp. 379–380.) There, the court emphasized the narrowness of <u>Cluff</u>: "Unlike the trial court in <u>Cluff</u>, which relied

23

1

2

3

4

> on a factor—the defendant's intentional obfuscation of his whereabouts— allegedly unsupported by the record, the trial court in this case refused to strike defendant's prior convictions based on factors allowed under the law and fully supported by the record." (Carmony I, supra, at p. 379.) Therefore, Cluff does not assist defendant in this case.

5

6

7

8

> The bulk of defendant's Romero briefing invites us to reweigh relevant factors, and contends the trial court should have given more or less weight to particular points. But we may not reverse the denial of a Romero motion unless the decision was "so irrational or arbitrary that no reasonable person could agree with it." (Carmony I, supra, 33 Cal.4th at p. 377.) Given defendant's record, we certainly cannot say the trial court erred in declining to find defendant fell outside the spirit of the Three Strikes law.

9

Holsey, 2012 WL 4857576, at **9-11.

10

Petitioner does not allege that the sentence he challenges was imposed under an invalid

11

statute or that it was in excess of that actually permitted under state law.[6] Cf. Marzano v.

12

Kincheloe, 915 F.2d 549, 552 (9th Cir.1990) (due process violation found where the petitioner's

13

sentence of life imprisonment without the possibility of parole could not be constitutionally

14

imposed under the state statute upon which the conviction was based); see also Makal v. State of

15

Arizona, 544 F.2d 1030, 1035 (9th Cir.1976) (So long as a sentence imposed by a state court "is

16

not based on any proscribed federal grounds such as being cruel and unusual, racially or

17

ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are

18

matters of state concern.").  Rather, petitioner merely claims that the trial court abused its

19

discretion under state law in denying his Romero motion and erred in its application of state

20

sentencing law.  Absent fundamental unfairness, federal habeas corpus relief is not available for a

21

state court's misapplication of its own sentencing laws.  Estelle, 502 U.S. at 67; Middleton v.

22

Cupp, 768 F.2d 1080, 1085 (1986); Christian v. Rhode, 41 F.3d 461, 469 (9th Cir.1994) (federal

23

habeas relief unavailable for claim that state court improperly relied upon a prior federal offense

24

to enhance punishment); Miller v. Vasquez, 868 F.2d 1116, 1118–19 (9th Cir.1989) (claim that a

25

prior conviction was not a "serious felony" under California sentencing law not cognizable in

26

federal habeas proceeding).  To state a cognizable claim for federal habeas corpus relief based on

27

---

28

[6]  The undersigned addresses petitioner's cruel and unusual punishment claim in Section VI below.

an alleged state sentencing error, a petitioner must show that the alleged sentencing error was "so arbitrary or capricious as to constitute an independent due process" violation.  <u>Richmond v. Lewis</u>, 506 U.S. 40, 50, 113 S.Ct. 528 (1992).

Petitioner cannot show that the state sentencing court's decision was arbitrary or capricious.  The sentencing judge declined to strike petitioner's prior convictions for purposes of sentencing after thoroughly considering the relevant circumstances and applicable state sentencing law.  The state appellate court, in turn, also carefully considered those factors in rejecting petitioner's contention on appeal that the sentencing court abused its discretion under state law.  Under these circumstances, petitioner fails to demonstrate an independent due process violation and the state courts' rejection of petitioner's <u>Romero</u> claim is not contrary to, or an unreasonable application of federal law. <u>See</u> <u>Haller v. Biter</u>, No. 2:10–cv–3446 WBS DAD P, 2012 WL 3764045, at * 19 (E.D.Cal. Aug. 29, 2012) (the decision of state courts with respect to petitioner's <u>Romero</u> claim under state law was not contrary to or an unreasonable application of federal law); <u>Mercadel v. Trimble</u>, No. CV 12–0234–ODW (VBK), 2012 WL 4349313, at *8 (C.D.Cal. Aug.29, 2012) ("[A] claim that the state court erred by refusing to grant Petitioner's <u>Romero</u> motion and striking one of Petitioner's prior strikes only concerns state sentencing law and does not implicate a federal constitutional right." [citations omitted]).  Accordingly, petitioner is not entitled to federal habeas relief with respect to this claim.

VI.    <u>Eighth Amendment – Cruel and Unusual Punishment</u>

Petitioner claims that the 28-year-to-life sentence he received is grossly disproportionate to the offense of failing to update his annual sexual offender registration and violates the Eighth Amendment's prohibition on cruel and unusual punishment.  The state court of appeal rejected petitioner's claim, reasoning as follows:

> We also reject defendant's contention that his sentence is unconstitutionally cruel.
>
> Generally speaking, for state law purposes, a sentence is too harsh if it is "so disproportionate to the crime that it 'shocks the conscience' in light of the defendant's history and the seriousness of his offenses." (<u>People v. Nichols</u> (2009) 176 Cal.App.4th 428, 435 (<u>Nichols</u>).) Generally, for federal purposes, a sentence is too harsh if it is found to be grossly disproportionate "by weighing the crime and defendant's

sentence 'in light of the harm caused or threatened to the victim or society, and the culpability of the offender.'" (Ibid.)

1. Carmony II

In Carmony II, this court found a Three Strikes sentence of 25 years to life violated both state and federal constitutional norms where Carmony failed to register within five days of his birthday but had not moved since his last registration, and where Carmony had evidently turned his life around.

In Carmony II, we noted that the defendant had committed no further sex offenses since his original 1983 sexual offense, had committed no serious or violent offenses since 1992, had "no tendency to commit additional offenses that pose a threat to public safety," and "was acting in a responsible manner" in that he had married, participated in alcohol classes, was employed, and did not pose "a serious risk of harm to the public justifying a life sentence." (Carmony II, supra, 127 Cal.App.4th at pp. 1073, 1080–1081, 1087–1088.)

In contrast, in the instant case, defendant persisted in committing sexual and other offenses, has two prior registration convictions, is unemployed, and has neither stable relationships nor discernible prospects. Critically, as the trial court found, unlike the defendant in Carmony II, here defendant presents a high danger of sexual re-offense and therefore is a threat to society.

Because defendant's personal history sharply differs from that of Carmony's, in that he has not rehabilitated himself and presents a danger to society, we agree with the trial court that Carmony II does not govern this case. The sentence is not "so disproportionate to the crime that it 'shocks the conscience' in light of the defendant's history and the seriousness of his offenses." (Nichols, supra, 126 Cal.App.4th at p. 435.) Nor can we find the sentence grossly disproportionate "by weighing the crime and defendant's sentence 'in light of the harm caused or threatened to ... society [.]' " (Nichols, supra, at p. 435, emphasis added.)

2. Ninth Circuit cases

Apart from his reliance on Carmony II, defendant also relies on three Ninth Circuit decisions to support his Eighth Amendment claim. We are not bound by these decisions. (See People v. Crittenden (1994) 9 Cal.4th 83, 120, fn. 3.) Further, we find them distinguishable.

In Ramirez v. Castro (9th Cir.2004) 365 F.3d 755 (Ramirez), both of the defendant's strikes were nonviolent robberies arising from shoplifts, and the current offense was a petty theft (shoplift of a VCR) with a prior theft conviction; the strikes jointly resulted in a single county jail sentence, Ramirez displayed no further criminality until the VCR shoplift, and he presented evidence of rehabilitation. (Ramirez, supra, 365 F.3d at pp. 756–759, 761, 768–769.) In marked contrast to the defendant in Ramirez, here defendant's strikes were forcible oral copulation and second degree robbery, he has served three prior prison terms, he has not demonstrated reform, and he remains a danger to

1    society.

2        In Reyes v. Brown (9th Cir. 2005) 399 F.3d 964 (Reyes), the
     defendant's prior strikes were residential burglary (committed at age 17
3    in 1981, resulting in a commitment to the former CYA) and a 1987
     armed robbery (resulting in a prison sentence); the current offense
4    (committed in 1997) was perjury on a driver's license application.
     (Reyes, supra, 399 F.3d at pp. 965–966, 968.) The Ninth Circuit held
5    Reyes would be eligible for relief on habeas corpus unless the armed
     robbery "was a 'crime against a person' or involved violence" so as to
6    justify a Three Strikes sentence, and remanded so the nature of that
     robbery could be sufficiently developed. (Reyes, supra, at pp. 969–
7    970.) We agree with the dissent, which concluded the majority unduly
     minimized the fact Reyes's conviction was for armed robbery, that he
8    had been sent to prison, and that he was a career criminal. (Id. at pp.
     970–972 [dis. opn. of Tallman, J.].)  Further, here defendant used a
9    knife in his 1985 strike, has served three prior prison terms, is a career
     criminal, and poses a high danger of sexual reoffense. Even were we to
10   agree with the majority, here defendant's case is distinguishable from
     the defendant in Reyes.
11
         The Ninth Circuit decision cited by defendant which is most
12   comparable to the instant case is Gonzalez v. Duncan (9th Cir.2008)
     551 F.3d 875 (Gonzalez). Gonzalez, like defendant, failed to update his
13   sex offender registration but had not moved, and received a sentence of
     28 years to life, based on two prior strikes and three prior prison terms.
14   (Gonzalez, supra, 551 F.3d at pp. 878–879.) The court concluded that
     despite Gonzalez's criminal history, there was "no evidence that, as of
15   2001 [i.e., at the time of his current offense], Gonzalez was a
     recidivist" and that "Gonzalez's present offense does not reveal any
16   propensity to recidivate." (Gonzalez, supra, at pp. 886–887.)

17       We need not decide whether we agree with the holding in Gonzalez, as
     we agree with the trial court that Gonzalez is distinguishable for the
18   same reasons we distinguished Carmony II: Here, viewed in support of
     the trial court's sentencing findings, the record shows defendant
19   presents a continuing threat to society.

20       Accordingly, we reject the cruel punishment claims.

21   Holsey, 2012 WL 4857576, at **11-13.

22       A.  Applicable Legal Principles

23       The United States Supreme Court has held that the Eighth Amendment includes a "narrow

24   proportionality principle" that applies to terms of imprisonment.  See Harmelin v. Michigan, 501

25   U.S. 957, 996, 111 S. Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring); see also

26   Taylor v. Lewis, 460 F.3d 1093, 1097 (9th Cir. 2006).  However, successful challenges in federal

27   court to the proportionality of particular sentences are "exceedingly rare."  Solem v. Helm, 463

28   U.S. 277, 289-90, 103 S. Ct. 3001, 77 L.Ed.2d 637 (1983); see also Ramirez v. Castro, 365 F.3d

1   755, 775 (9th Cir. 2004).  "The Eighth Amendment does not require strict proportionality

2   between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly

3   disproportionate' to the crime."  Ewing v. California, 538 U.S. 11, 23, 123 S. Ct. 1179, 155

4   L.Ed.2d 108 (2003) (quoting Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring)); see also

5   Lockyer, 538 U.S. at 73 (in addressing an Eighth Amendment challenge to a prison sentence, the

6   "only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application

7   of' framework is the gross disproportionality principle").

8           In assessing the compliance of a non-capital sentence with the proportionality principle, a

9   reviewing court must consider "objective factors" to the extent possible.  Solem, 463 U.S. at 290.

10  Foremost among these factors are the severity of the penalty imposed and the gravity of the

11  offense.  Id. at 290-91.  If "a threshold comparison of the crime committed and the sentence

12  imposed leads to an inference of gross disproportionality," the reviewing court should compare

13  the sentence with sentences imposed on other criminals in the same jurisdiction and for the same

14  crime in other jurisdictions.  Harmelin, 501 U.S. at 1005.  "Comparisons among offenses can be

15  made in light of, among other things, the harm caused or threatened to the victim or society, the

16  culpability of the offender, and the absolute magnitude of the crime."  Taylor, 460 F.3d at 1098.

17  If a comparison of the crime and the sentence does not give rise to an inference of gross

18  disproportionality, a comparative analysis is unnecessary.  Id.

19          B.  Analysis

20          This is a close case.  However, the undersigned finds that the Court of Appeal's

21  determination: that petitioner's sentence does not fall within the type of "exceedingly rare"

22  circumstance that would support a finding that his sentence violates the Eighth Amendment, is

23  not an unreasonable application of Supreme Court authority.  As the Court of Appeal mentioned,

24  petitioner is a recidivist—a continuing threat to society as evidenced by his long criminal history:

25              The probation reports and other material presented to the trial court
             shows defendant's criminal past began in 1982 with a misdemeanor

26              burglary conviction.  Defendant spent time in the former California
             Youth Authority on two separate occasions.  This was followed by

27              two misdemeanors before his first felony conviction, in 1985, for
             oral copulation by force—his first strike.  The facts show he

28              forcibly orally copulated a woman in a bar, threatening to kill her

1
2
3
4
5
6
7

> with a knife.  In 1992, defendant suffered his second strike, for second degree robbery, wherein defendant and his cohort grabbed a gold chain from the victim's neck, then fled.  Also in 1992, defendant suffered a misdemeanor sex offender registration conviction.  For his 1995 misdemeanor child annoyance conviction (Pen. Code, § 647.6) defendant pulled his pants down and told a 10-year-old child, "'I'm going to make you suck my dick just like an ice cream, just like all the other kids did[.]'"  In 2002, he picked up a felony sex offender registration conviction.  He served prison terms for the 1985 sex offense, the 1992 robbery, and the 2002 sex registration offense, with multiple parole violations.  He was released from parole just over a year before the instant offense.

8    Holsey, 2012 WL 4857576, at *8.

9        Petitioner contends that Gonzalez v. Duncan, 551 F.3d 875 (9th Cir. 2008) is

10   indistinguishable from the instant case and thus controls.  In Gonzalez, the defendant was

11   convicted of failing to update his annual sex offender registration.  Id. at 878.  He had three prior

12   serious or violent felony convictions, which included convictions for cocaine possession,

13   committing a lewd act with a child under 14 years of age, attempted rape by force, and a second-

14   degree robbery.  Id.  The Ninth Circuit weighed Gonzalez's criminal offense "'in light of the

15   harm caused or threatened to the victim or to society, and the culpability of [Gonzalez].'"  Id. at

16   884 (quoting Helm, 463 U.S. at 292, 103 S.Ct. 3001).  In doing so, the Ninth Circuit explained:

17
18
19
20
21
22

> [California Penal Code] § 290(a)(1)(D)'s annual registration requirement, which Gonzalez was convicted of violating, is only tangentially related to the state's interest in ensuring that sex offenders are available for police surveillance.  Annual registration is merely a "backup measure to ensure that authorities have current accurate information."  People v. Carmony, 127 Cal. App. 4th 1066, 26 Cal. Rptr. 3d 365 (2005).  Failure to comply with the annual registration is "the most technical violation of the section 290 registration requirement," and "by itself, pose[s] no danger to society."  People v. Cluff, 87 Cal. App. 4th 991, 105 Cal. Rptr. 2d 80, 81, 86 (2001).

23   Id.  The Ninth Circuit concluded that Gonzalez's sentence of 28 years to life was "'harsh . . .

24   beyond any dispute.'"  Id. at 886, quoting Ramirez, 365 F.3d at 767.  However, the Ninth Circuit

25   recognized that "California has a valid 'public-safety interest in incapacitating and deterring

26   recidivist felons,'" and thus considered Gonzalez's criminal history and his recidivism.  Id.

27   (quoting Ewing, 538 U.S. at 29, 123 S.Ct. 1179 (opinion of O'Connor, J.)).  It is at this point

28   where the similarities between Gonzalez and petitioner may end.  As of the date of his conviction,

1   the Ninth Circuit found no evidence that Gonzalez was a recidivist.  Id. at 887.  On the contrary

2   and as the California Court of Appeal noted, petitioner has two prior registration convictions, in

3   1992 and 2002, and several parole violations, the most recent occurring in January 2009.

4   Resp't's Lod. Doc. 3 at 402-05.  His most recent stay in custody ended in March 8, 2009.

5   Resp't's Lod. Doc. 3 at 405.   Accordingly, unlike Gonzalez, there is evidence that petitioner was

6   a recent recidivist.

7           Unlike the Court of Appeal which may have rested its decision part on petitioner's mental

8   condition *per se*, the undersigned expressly notes that he does not rely on petitioner's "mental

9   instability" as a factor in recommending denial of petitioner's claim.[7]  Such reliance comes close

10  to running afoul of the Supreme Court's decision in Robinson v. California, 370 U.S. 660, 82

11  S.Ct. 1417 (1962)—that "a defendant may not be convicted of a crime by showing that he or she

12  has a particular forbidden status."  United States v. Kidder, 869 F.2d 1328, 1332 (9th Cir. 1989).

13  However, if a statute punishes a defendant's act as opposed to his status, there is no violation of

14  Robinson.  See e.g., Powell v. Texas, 392 U.S. 514, 533, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968)

15  (defendant punished for being drunk in public, not for his status as a chronic alcoholic); Budd v.

16  Madigan, 418 F.2d 1032, 1034 (9th Cir. 1969) (Robinson has no application to public

17  drunkenness because defendant was punished for his acts, and not simply because he was an

18  alcoholic).  In this instance, petitioner was punished for his willful failure to update his annual sex

19  offender registration, not for his mental impairments.  In distinguishing Gonzalez and Carmony

20  II, the state appellate court concluded that petitioner posed a high risk of danger to society based

21  on petitioner's criminal background *and* his psychiatric evaluations.  Holsey, 2012 WL 4857576,

22  at *12.  Petitioner's psychiatric history included a diagnosis of antisocial personality disorder,

23  alcohol abuse, amphetamine abuse, psychotic disorder, and learning disorder.  Id. at *9.

24  Indefinite, involuntary commitment because one's mental condition predisposes him to commit

25  crimes is only permitted for *treatment* not *punishment* purposes.  Kansas v. Hendricks, 521 U.S.

26  346, 117 S.Ct. 2072 (1997).   As such, the Court of Appeal may have sustained the punishment in

27

28  [7]       Neither party briefed this issued.

1   this case *in part* because the mental condition of petitioner predisposed him to commit further

2   crimes. In an abundance of caution, the undersigned reiterates that his recommendation is based

3   on petitioner's criminal background and his recidivism, *not* his mental impairments or psychiatric

4   history.

5          If the undersigned were reviewing this issue *de* novo, he might find that the Eighth

6   Amendment was violated primarily because of the relatively non-serious nature of the underlying

7   crime.  Nonetheless, the state appellate court's rejection of petitioner's Eighth Amendment claim

8   was not an unreasonable application of the gross disproportionality standard under well-

9   established Supreme Court authority.  Accordingly, petitioner is not entitled to federal habeas

10  relief with respect to his claim that his sentence constituted cruel and unusual punishment in

11  violation of the Eighth Amendment.

12  CONCLUSION

13         For all the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of the

14  Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of

15  appealability when it enters a final order adverse to the applicant.  A certificate of appealability

16  may issue only "if the applicant has made a substantial showing of the denial of a constitution

17  right." 28 U.S.C. § 2253(c)(2).  For the reasons set forth in these findings and recommendations,

18  a substantial showing of the denial of a constitutional right has been made in this case on the

19  "willfulness" jury instruction issue and the Eighth Amendment disproportionate punishment

20  issue.

21         Accordingly,

22         IT IS HEREBY ORDERED that within fourteen (14) days of the filed date of this

23  Findings and Recommendations/Order, petitioner indicate whether he desires counsel to be

24  appointed for the purpose of presenting and arguing objections;

25          IT IS HEREBY RECOMMENDED that:

26         1.   Petitioner's application for a writ of habeas corpus be denied; and

27         2.   The District Court issue a certificate of appealability on the two issues referenced

28              above.

31

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a documents should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 10, 2014

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:076